# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

Robert Anderson_____          9th Cir. Case No. 24-4503_____
Appellant(s),

                        District Court or
       vs.                     BAP Case No. 3:21-cv-00139-SLG_

Municipality of Anchorage_____
Appellee(s).

## APPELLANT'S INFORMAL OPENING BRIEF

*(attach additional sheets as necessary, up to a total of 50 pages including this form)*

**JURISDICTION.** This information helps the court determine if it can review your case.

1.    Timeliness of Appeal:

    a.  What is the date of the judgment or order that you want this court to review? ___July 6, 2024__

    b.  Did you file any motion, other than for fees and costs, after the judgment was entered? Answer yes or no: ___yes_____

        • If you did, on what date did you file the motion? _July 19, 2024_

        • For prisoners or detainees, what date did you give the motion to prison authorities for mailing? _____

        • What date did the district court or bankruptcy appellate panel (BAP) decide the motion that you filed after judgment? __August 2, 2024_

    c.  What date did you file your notice of appeal? __July 19, 2024_

        • For prisoners or detainees, what date did you give your notice of appeal to prison authorities for mailing? _____

9th Cir. Case No. _24-4503_____                                    Page 2

**FACTS.** Include all facts that the court needs to know to decide your case.

2.    What are the facts of your case?

    On July 11, 2019 a Anchorage ad valorem field appraisal employee entered the constitutionally protected area of my private residential tax parcel to gather information and gathered information without my consent. The appraisal employee gathered information under a Anchorage policy or custom.

    On August 29, 2019 I went to the cashier station at city hall to make a payment on my ad valorem tax parcel. My account was past due by $500 for 14 days. The cashier informed me a 10% delinquency penalty had been added to my account but wavier through the head cashier might be possible. I spoke to the head cashier who confirmed I owed the 10% delinquency penalty. I paid the principal and 10% penalty and requested a receipt showing payment to that effect,

**PROCEEDINGS BEFORE THE DISTRICT COURT OR THE BAP.** In this section, we ask you about what happened before you filed your notice of appeal with this court.

3.    What did you ask the district court or the BAP to do—for example, did you ask the court to award money damages, issue an injunction, or provide some other type of relief?

    I sought Injunctive relief, declaratory judgment, compensatory damages (Claim I $1, other Claims yet to be determined) and posting of Anchorage policy or custom and training of employees

    Relevant questions of law, Rule 12(c) motion on AS § 29.45.130 defense, motion to review professional conduct, motion to sign interrogatories, oppose Anchorage protective order

9th Cir. Case No. _24-4503_____          Page 3

4.    What legal claim or claims did you raise in the district court or at the BAP?

4th Amendment unreasonable search (Claim I)
14th Amendment equal protection class of one violation (Claim III)
14th Amendment substantive due process violation (Claim IV)
14th Amendment procedural due process violation (Claim V)
14th Amendment equal protection class of one violation (Claim VII)

5.    **Exhaustion of Administrative Remedies.** For prisoners, did you use up all administrative remedies for each claim before you filed your complaint in the district court? If you did not, please tell us why.

**PROCEEDINGS BEFORE THE COURT OF APPEALS.** In this section, we ask you about issues related to this case before the court of appeals and any previous cases you have had in this court.

6.    What issues are you asking the court to review in this case? What do you think the district court or the BAP did wrong?

(1) Claim I dismissal under 28 U.S.C. § 1341
(2) Claim III dismissal under Rule (12)(b)(6)
(3) Claim IV dismissal under Rule (12)(b)(6)
(4) Claim V dismissal under Rule (12)(b)(6)
(5) Claim VII Sua Sponte dismissal under Rule (12)(b)(6)
(6) The Protective Order Granted to Anchorage
(7) The Rule 12(c) motion for Partial Judgment on Pleadings Denied to me
(8) The motion for Review of Professional Conduct Denied to me
(9) The motion to Compel Rule 33 Signature Denied to me

7.    Did you present all issues listed in Question 6 to the district court or the BAP?
Answer yes or no: __yes_____

If not, why not?

8.    What law supports these issues on appeal? (You may refer to cases and statutes, but you are not required to do so.)

9th Cir. Case No. _24-4503_____                                    Page 4

## (1) Claim I dismissal under 28 U.S.C. § 1341

Anchorage at Docket 82 made a Rule 12(h)(3) suggestion the court lacked subject matter jurisdiction, *Augustine v. United States*, 704 F. 2d 1074, 1075 n.3 (9th Cir. 1983). Taxpayers have 14th Amendment procedural due process rights, when a state fails to provide those rights a federal remedy can be had. Anchorage flips 28 U.S.C. § 1341 into a defense arguing Anchorage provides a state court taxpayer remedy, I am a taxpayer under the allegations of Claim I and Congress intended my 4th Amendment remedies to be litigated through appeal of ad valorem tax matters in state court.

28 U.S.C. § 1341 (hereafter TIA) by it's simple language captures all forms of state taxation, Sales and Gross Receipts Taxes, License Taxes, Income and Inheritance Taxes, Severance and Production Taxes, Poll Taxes and of coarse Property Taxes. The TIA is capable of multiple interpretations because of the almost infinite possibility of state tax schemes it most cover.

In *Hibbs v. Winn*, 542 U.S. 88, 105 (2004) n.7 the court explains the scope of TIA "The TIA does not prohibit interference with "the operation of, or compliance with," state tax laws; rather, § 1341 proscribes interference only with those aspects of state tax regimes that are needed to produce revenue—i.e., assessment, levy, and collection.".

### (a) Ad Valorem Taxation as a 14th Amendment procedural due process

9th Cir. Case No. _24-4503_____                                    Page 5

***Property Right.*** The power of taxation is a state sovereign power, *Railroad Company v. Peniston*, 85 U.S. (18 Wall.) 5, 29, (1873).

Three Supreme Court cases establish taxpayer rights. *Davidson v. New Orleans*, 96 U.S. 97, 104–105 (1878) held a judicial decision in a court of competent jurisdiction is taxpayer due process of law. *Londoner v. City and County of Denver*, 210 U.S. 373, 385 (1908) held when Anchorage's legislature and not the state legislature determines whether, in what amount, and upon whom ad valorem taxes will be collected the state must provide opportunity for informal board of equalization hearing to decide a final value before Anchorage can enact tax legislation. *Atchison, T. & SFR Co. v. O'Connor*, 223 U.S. 280, 285 (1912) held a clear and certain remedy is required in tax collection therefore a taxpayer who pays a tax demand has a right to pursue immediate refund.

## (1) Municipal Corporation Pre Ad Valorem Tax obligations.

*Londoner* notice and opportunity is typically through a valuation mailing, every tax parcel owner is mailed to the address of record a statement of the estimated value of their tax parcel on a date certain, most typically the valuation date is January 1 of the tax year. A *Londoner* property valuation appeal can be taken to have the state decide if adjustment is warranted. A board of equalization conducts the hearing and can increase, decrease or leave unchanged Anchorage's full and true value estimate. At this stage of the proceeding there is no judicially

enforceable tax law and no U.S. Constitution appeal rights.

It must be under stood board of equalization appeals are not mandatory for taxpayers to receive 14th Amendment *Davidson* procedural due process. Under *Londoner v. City and County of Denver*, 210 U.S. 373, 386 (1908), a board of equalization hearing affords a taxpayer a informal opportunity to seek a state decision on particular types of taxes including real property ad valorem taxes. Boards of equalization represent the tax sovereign, the state, *Londoner* at 386. Boards of equalization valuation determinations are the going forward values used in enactment of a irrevocably fixed tax law. *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923), 14th Amendment liberty guarantees a right to "acquire useful knowledge", a taxpayer can appeal a valuation for the sole purpose of obtaining additional detail on their tax parcel valuation.

*Londoner* affords two important protections to taxpayers, all modifications to valuation rolls must be through a public board of equalization hearing & decision. If a taxpayer and assessors agreed to adjust a value without explanation and approval by a board of equalization the state is permitting Anchorage to place two values on the tax parcel, one public and one private. All appeals to a board of equalization must be decided, a final valuation determined, before a legislative enactment can occur. *Londoner* forces local tax jurisdictions and the state to act promptly as the valuation roll is incomplete until all disputes have been decided,

9th Cir. Case No. _24-4503_____                          Page 7

*Londoner* at 386.

A board of equalization applies the state statutory law standards of appraisal to the tax parcel on appeal to arrive at it's value decision. If the board finds Anchorage correctly applied the state statutory law standards of appraisal to the tax parcel no valuation adjustment will be made. If the board finds Anchorage misapplied the standards it must adjust to the correct valuation.

**(2) Legislative Act.** The legislative branch has the power of the purse. A tax is merely a legislative appropriation into a public treasury. Anchorage enacts legislation based on the initial valuation roll with any board of equalization modifications on appealed tax parcels. The ad valorem tax law is irrevocably fixed by the legislative enactment, *Londoner at* 385. A tax parcel value certain is stated for a date certain, a mill rate is applied to the tax parcel and collection begins.

Failure to enact ad valorem tax legislation means no enforceable law exist. The date of valuation and appraised value make ad valorem tax legislation one-shot laws, even if a tax parcel value doesn't change over a 365 day interval the valuation date is a year later requiring a new ad valorem tax collection law.

**(3) Refunds and equitable remedies.** *Rosewell v. LaSalle Nat. Bank*, 450 U.S. 503, 512 (1981) acknowledges prior holdings emphasizing the *procedural* aspect of a state law remedy as one would expect. I view TIA as a 14th Amendment Section 5 enactment guaranteeing me taxpayer procedural due process

rights.

A tax refund claim argues the tax jurisdiction exceed its authority by valuing a tax parcel at more than the applicable standards of appraisal allow. If courts were to determine value they would be encroaching on the legislative branches appropriation duties, when a tax jurisdiction gets all they demanded from a taxpayer the only question is did they demand to much. The Supreme Court applied refund principals in *Great Northern R. Co. v. Weeks*, 297 U.S. 135, 153 (1936). The court did nothing more than any fact finder is required to do, determine if the demand was excessive under the law.

### (b) 28 U.S.C. § 1341 as controlling law of my 4th Amendment Claim I.

Congress was well aware of judicial decisions on taxpayer rights, TIA positive law Aug. 21, 1937, ch. 726, § 1, 50 Stat. 738 included the terms "at law or in equity" as both remedies are cognizable under tax disputes. The TIA places taxpayer lawsuits within district court jurisdiction when the state fails to provide for a judicial decision in a court of competent jurisdiction or fails to comply with the TIA's plain, speedy and efficient remedy criteria. *Amos v. Glynn County Bd. of Tax Assessors*, 347 F. 3d 1249, 1251 (11th Ckt 2003) is a well reasoned decision which turned on plain, speedy and efficient remedy, at 1255. Usually the taxpayer grievance is obvious and the inquiry is does the state provide a remedy.

Substantive state law rights, enforceable under the 14th Amendment

involving taxation are not barred by TIA, see *Weissinger v. Boswell*, 330 F. Supp. 615, 618 (1971). Alabama must comply with it's state constitution on tax matters.

The 4th Amendment protects privacy of dwelling occupants on private property, Congress recognized even later enacted criminal supreme law of the land must yield to the 4th Amendment, *Carroll v. United States*, 267 U.S. 132, 142 (1925). A gangster could invite 100 of his closest associates over to his dwelling to indulge without fear their illegal activity would be subject to a search warrant. To read Congress as leaving to states all 4th Amendment procedural protections for single family detached dwelling tax parcel occupants under the TIA is a new interpretation of the enactment. To interpret congressional intent in a fiscal constant statute to include determinations of fundamental dwelling occupant privacy rights is without precedent in law. The 4th Amendment was enacted to stop general warrant tax searches, *Stanford v. Texas*, 379 U.S. 476, 481 (1965).

My Claim I is a constitutional civil rights 4th Amendment unreasonable search claim, TIA is a statutory law. The 9th Circuit decided a 12 U.S.C. § 632 vs. 28 U.S.C. § 1341 statutory conflict in *San Francisco v. Assessment Appeals Bd.,* 122 F. 3d 1274, 1276 (9th Ckt 1997). Neither Congress, nor the court can repeal a constitutional provision by implication.

***(c) Alaska Law & Court Decisions on Ad Valorem Appeals.*** Alaska local government ad valorem taxpayer appeal rights are found at AS § 29.45.210 (d):

9th Cir. Case No. _24-4503_____                                      Page 10

> An appellant or the assessor may appeal a determination of the board of equalization to the superior court as provided by rules of court applicable to appeals from the decisions of administrative agencies. Appeals are heard on the record established at the hearing before the board of equalization. (§ 12 ch 74 SLA 1985).

Same, see Docket 76 exhibit 19 page 4 (E).

The due process conflicts are obvious, a board of equalization decision is optional for a taxpayer and making a going forward valuation for the purpose of enacting a enforceable law. An appellate court does not provide a original decision on the merits, de novo is not by taxpayer right.

Anchorage cannot show actual compliance with TIA. State ad valorem taxpayer appeal rights are as described in *Fairbanks Gold V. Fairbanks N. Star Assr.*, 488 P. 3d 959, 965 (2021). The court independently reviews and directly scrutinizes the merits of the board's decision. Questions of law and fact involving agency expertise are reviewed under the reasonable basis standard. Assessor's valuations are reviewed for substantial evidence with fraud and use of wrong principals as side shows. Anchorage provides taxpayers 5 minutes, municipal code §12.05.053 (C)(6), to address all those issues at a board of equalization hearing. When federal courts do have jurisdiction rules of civil procedure apply.

Anchorage cases *Kelley v. Mun. Anchorage Bd. Of Equalization*, 442 P. 3d 725, 728 (2019), and *Brandner v. Municipality of Anchorage*, 327 P. 3d 200, 202 (2014) follow the same standard of review.

*(d) The District Court Opinion.* The court failed to evaluate Alaska taxpayer judicial statutory scheme instead looking at the legislative ad valorem appraisal scheme. TIA subject matter jurisdiction flows from a determination the state court taxpayer appeal procedure provides a timely remedy to whatever taxpayer claim I wish to pursue, refund, exemption, lack of uniformity and any other non frivolous claim. The determination in the instant case is can I pursue a 4th Amendment taxpayer claim under state tax appeal procedures provide by the state AND was it the intent of Congress for me to litigate my 4th Amendment claim in state court under taxpayer due process.

The 4th, 5th & 6th Circuits have all heard 4th Amendment cases involving individualized appraiser entry on to private residential property. *Covey v. Assessor of Ohio County*, 777 F. 3d 186, 189-190 (4th Ckt 2015) Rule 12(b)(6) dismissal reversed and remanded, *King v. Handorf*, 821 F. 3d 650, 655 (5th Ckt 2016) decided on qualified immunity grounds but the scope of consent actually given was highly disputed by the parties, *Widgren v. Maple Grove Township*, 429 F. 3d 575, 585-586 (6th Ckt 2005) was decided under a strained *Katz v. United States*, 389 U.S. 347 (1967) expectation of privacy analysis.

The *Widgren* court created a sort of administrative law warrantless anticipatory search special needs exception doctrine applicable to field appraisals of private residential tax parcels or in short new federal common law trespass.

9th Cir. Case No. _24-4503_____                              Page 12

*Widgren* at 578 "The Fourth Amendment's protections hinge on the occurrence of

a `search,' a legal term of art whose history is riddled with complexity.". Contrast

*Carpenter v. U.S.*, 585 U.S. 296, 304 (2018) "For much of our history, Fourth

Amendment search doctrine was "tied to common-law trespass" and focused on

whether the Government "obtains information by physically intruding on a

constitutionally protected area." *United States v. Jones*, 565 U.S. 400, 405, 406, n.

3, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012). ".

Anchorage's Docket 82 Motion to Dismiss is argued in Docket 81 with refer

to evidence found in my Docket 76 Motion for Summary Judgment. The court

reviewed that evidence in reaching it's Docket 96 opinion, see page 2 footnote 11

and again at page 6 footnote 35. To what extent the court followed 9th Circuit

precedent, *Fair Housing Council of Riverside v. Riverside Two*, 249 F. 3d 1132,

1136 (9th Ckt 2001) in deciding Anchorage's cross-motion is unclear. Anchorage

did not dispute a single factual matter contained in my Docket 76 Motion for

Summary Judgment. The Alaska Districts Local Rules 5.1(f) and 7.1(e), while

highly suspect, are how the case proceeded.

The starting point in my case is the 4th Amendment. The court assumes, for

4th Amendment purposes, all the steps it outlines are constitutional and essential

for Anchorage to properly value my tax parcel. It is the incident on July 11, 2019

that the court must find bars it's ability to render a decision on my claim.

District court dismissal of a claim for lack of subject matter jurisdiction is a question of law, *Jerron West v. California State Bd. of Equalization*, 129 F. 3d 1334, 1337 (9th Ckt 1997). The court made new law finding TIA bars jurisdiction to declare my rights in my civil rights 4th Amendment claim.

**(1) AS § 29.45.110(a) Full and True Statutory Requirement.** The court reads AS § 29.45.110(a) as a statutory mandate allowing entry onto my tax parcel to obtain a "accurate understanding of the value". As a matter of law there could be three different tax parcel valuations in any given year, the Anchorage assessors, a board of equalization's valuation decision and a judicial fact finder refund value determination. The TIA is silent on estimating ad valorem tax parcel values for good reason, real property ad valorem tax appraisal is far less precise than the court believes. In *CSX Transp. v. GEORGIA STATE BD. OF EQUAL.*, 552 U.S. 9, 17, (2007) the court likened a ad valorem market value determination to a "... applied science, even a craft.".

Anchorage's tax jurisdiction has approximately 40,000 residential real property tax parcels, Docket 76 Exhibits 36, 37 & 38, visited not at a precise six year interval but at randomized durations, see Docket 76 exhibit 17 pages 3,6,9, 12,14,15,17,18,21,24,28,31,35,38,41,45,48,51,54,57,59,63,66 & 69 "visit date" varies and types of inspections, "entrance source" vary.

Docket 76 Exhibit 25 page 16 discusses what could best be described as

computer aided mass appraisal modeling and statistical accuracy best practices.

Anchorage's valuing of 40,000 residential tax parcels on January 1st of each year

results in some tax parcels being over valued and some tax parcels being under

valued. The IAAO explains at "5.2.1 Assessment Level" that valuation models,

schedules, and tables help ensure accuracy with a median ratio of + to – 10%,

between 0.90 and 1.10, of full and true value for the majority of tax parcels,

outliers both high and low do exist.

     The courts interpretation of AS § 29.45.110(a) as a obligation for absolute

accuracy overstates the achievable. The court in International *Harvester Co. v.

Evatt*, 329 U.S. 416, 422 (1947) recognized the practical impossibility of achieving

perfect apportionment in taxation, it's fair to say Anchorage valuing 40,000

residential tax parcel is equivalent to a fairly complex business transaction.

     AS § 29.45.110(a) full and true value says appraisal value will be a

monetary amount on a date certain, I can't argue my tax parcel is worth 2 pigs

(Idaho Pasture piggies Dolly & Loretta) and 2 sheep (Katahdin ewe lambs Stevie

& Whitney) in a court of competent jurisdiction and prevail on a refund claim. The

Alaska Supreme Court has held, *Fairbanks North Star v. Golden Heart Util.*, 13 P.

3d 263, 268 including n.21 (2000) that the implementing law for Alaska

Constitution Article IX – Finance and Taxation § 3 standards of appraisal is AS §

29.45.110(a). No jury trail appears to have ever occurred in Alaska with the jury

instruction AS § 29.45.110(a) is controlling appraisal valuation law.

In terms of the courts use of AS § 29.45.110(a) in it's Docket 96 opinion neither party briefed the use of AS § 29.45.110(a) as controlling law, Docket 96 page 6, for a TIA jurisdictional question, it is error to decide my 4th Amendment rights on a unbriefed state law of questionable material relevance.

**(2) 28 U.S.C. § 1341 "Assessment" as a Jurisdictional Bar.** It is the effect the word "assessment" has on a tax jurisdictions ability to collect a tax that is relevant under TIA. Anchorage like any tax jurisdiction can estimate tax parcel value in many different ways, as often as they want using whatever data set they deem relevant. The appraisal value of a tax parcel is only tied to a tax demand when a legislative enactment occurs.

The Supreme Court has held TIA "is to be enforced according to its terms", *Jefferson County v. Acker*, 527 U.S. 423, 433 (1999). In *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 279 (1856) the court cited a Massachusetts act of 1786 where the terms "tax or assessment" were used interchangeably with respect to collection.

Congress uses the term "assessment" in 28 U.S.C. § 1341, Congress has used the same term in the 1976 Railroad Revitalization and Regulatory Reform Act, Public Law 94-210 – Feb. 5, 1976, 90 Stat. 31 which deals directly with state ad valorem taxation of railroad property. At 90 Stat. 55 Congress defines

9th Cir. Case No. _24-4503_____                                    Page 16

"assessment" as it applies to every state in the union who elects to ad valorem tax railroads. The court has recognized in some circumstances a subsequent enactment by Congress can add context to a earlier statute, *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000). Congress at Title III Section 306 (3)(a) of the 1976 Railroad Revitalization and Regulatory Reform Act defines:

> " 'assessment' means valuation for purposes of a property tax levied by any taxing district".

The only lawfully enforceable valuation a property can have is the valuation the legislature gives the property when enacting a ad valorem tax revenue law. I read Congresses definition as simply a proper common law definition of the term assessment as applied to ad valorem property valuation and taxation.

My claim in no way impedes the Anchorage legislatures ability to enact a ad valorem tax revenue law. The district court at Docket 96 page 6 stated "... the Court understands assessment to mean the process of evaluating and recording what an individual or entity owes in taxes.". The court cites *Hibbs v. Winn*, 542 U.S. 88, 101 (2004), the relevant material is at 105 n.7, "The TIA does not prohibit interference with "the operation of, or compliance with," state tax laws; rather, **§ 1341 proscribes interference only with those aspects of state tax regimes that are needed to produce revenue**—i. e., assessment, levy, and collection.".

Taken as a whole the "assessment" referred to under the 28 U.S.C. § 1341 is

either the valuation provided by Anchorage's tax assessor or the valuation provided
by the state when a board of equalization hearing is conducted. The valuation
becomes fixed in law through the legislative enactment and enforceable in courts
of competent jurisdiction. My claim in no way turns on enjoining the Anchorage
tax assessor from valuing my tax property on legally obtained information or the
legislature from fixing that value in law.

      **(3) The courts reliance on AS 29.45.130 .** My Docket 76 Motion for
Summary Judgment includes extensive evidence of Anchorage's Monell policy or
custom as it pertains to my Claim I. The Municipality of Anchorage Residential
Appraisal Manual, Docket 76 exhibit 6, at page 104, SITE VISIT 2 interviews
**directs Anchorage's employees "to make estimates from off property" if told
by a dwelling occupant to leave.** Anchorage in fact tracks tax parcels where field
appraisers are told to leave, Docket 76 Exhibits 36, 37 & 38 Code 4 under the
"ENTRY_QL_2" column as specified at Docket 76, Exhibit 6 page 40 "Owner
refused to allow an inspection, land & improvement information estimated.".
Under the courts opinion Anchorage would properly obtain a search warrant, as
contemplated in AS § 29.45.130(b) to obtain the necessary information to meet it's
statutory obligation, what the court refers to at Docket 96 page 6 as "... the correct
tax liability".

      I moved the court for Rule 12(c) partial judgment on the pleadings at Docket

9th Cir. Case No. _24-4503_____                                    Page 18

48 on the validity of AS § 29.45.130 as a defense. My motion should have been

decided on the merits prior to the court relying on AS § 29.45.130 as controlling

law. For further argument on this issue please see (7) The Rule 12(c) motion for

Partial Judgment on Pleadings.

   *(e) Congressional Intent.* The seldom recognized effect of TIA is it

guarantees taxpayers 14th Amendment procedural due process rights. To read

Congress intent under TIA as taking away a federal forum for my 4th Amendment

privacy protection grievance is beyond comprehension.

   The TIA is a statutory right to invoke federal question jurisdiction limited to

in the first instance to decide if the court should conduct further proceedings. The

issue to be decided is one of state law statutory construction in the context of

taxpayer rights, *Rosewell v. LaSalle Nat. Bank*, 450 U.S. 503, 512 (1981). Federal

district courts must decide if a plain, speedy and efficient remedy in the courts of

the state exist when pleadings show taxpayer colorable jurisdiction. The courts

initial role is not to prevent unconstitutional state tax demands but to ensure a

remedy can be had through 1st a state court or 2nd a federal form.

   Anchorage attempts to use TIA as sword to end my 4th Amendment federal

grievance, Congress made the TIA a shield, the pleadings are taxpayer standing

without state court remedy, the only plausible defense is a plain, speedy and

efficient taxpayer remedy exist in the courts of the state. Nowhere within that

9th Cir. Case No. _24-4503_____                                    Page 19

framework can a 4th Amendment question be relevant.

    ***(f) Summary***. The court made no finding my Claim I actually impeded

Anchorage collection of ad valorem taxes. In the three year pendency of the case

Anchorage has collected or will through foreclosure preceding collect every tax

dollar demanded under ad valorem taxation legislation.

    Anchorage and the district court's attempt to characterize my 4th

Amendment claim as a taxpayer objection to a tax is unsupported in fact, law and

statutory construction of 28 U.S.C. § 1341. Anchorages argument they provide a

28 U.S.C. § 1341 "plain, speedy and efficient remedy" is unsupported in fact and

law. Jurisdiction for my 4th Amendment claim is as I pled, 28 U.S.C. § 1331 and

28 U.S.C. § 1343. There are no disputed facts under my Docket 76 motion for

summary judgment, the question of law should be decided under the facts of the

case.

## (2) Claim III dismissal under Rule (12)(b)(6)

    My Docket 1 Exhibit 1 page 2 recognized Anchorage field appraisal

employees may be acting under state trespass law. The theme ."Leave if told to do

so" permeates this entire case, the contrast to 4th Amendment consent, warrant or

special needs exception is obvious.

    I have extensive knowledge of Anchorage field appraisal practices, Docket 1

paragraphs # 43, #44, #174, #175, #176 & #178. I am engaged in the sane basic

9th Cir. Case No. _24-4503_____                                    Page 20

conduct as others, living in a dwelling. My claim is I am in a whomever didn't

answer a door knock class and dwelling occupants who answered a door knock are

a different but similarly situated class. Fundamental rights are at stake, privacy

under the 4th Amendment. Anchorage does not seek consent from any dwelling

occupants, a answered knock does however give a dwelling occupant opportunity

to tell a Anchorage field appraiser to leave. Anchorage is following a procedure by

presumption when a knock is unanswered, *Stanley v. Illinois*, 405 U.S. 645, 647

(1972).

A class distinction exist within the similarly situated single family

residential tax parcels visited by Anchorage field appraisers. Equal protection

violations do not lie in a determination the similarly situated parties receive their

constitutional rights, the test is does Anchorage have a rational bases for treating

me differently, *Lee v. City of Los Angeles*, 250 F. 3d 668, 686 (9th Cir. 2001).

AS § 29.45.130(b) and Anchorage's trespass ordinance §8.45.010 are "leave

if told to do so" schemes. But for the 4th Amendment or possibility the Alaska

Constitution there is no cognizable objection to Anchorage's entry onto private

property scheme and no violation of state trespass law if Anchorage's field

appraiser leaves if told to do so.

Anchorage placed the door hanger, Docket 1 Exhibit 4 on my visitor

entrance not to inform me they had violated my 4th Amendment rights but as

evidence I did not demand their employee leave my property. Anchorage's clear

intent is to differentiate knock answers from non-answers. Anchorage's defense

under trespass complaint where a knock is answered is you answered the knock

and did not tell the field appraiser to leave.

*Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) recognizes a

plaintiff's right to pursue a equal protection opinion where there is not a rational

bases for differential treatment of similarly situated parties.

Others may benefit from my equal protection claim, that does not mean I am

asserting rights of third party beneficiaries. *Williams v. Rhodes*, 393 U.S. 23, 30

(1968), in determining whether or not a state law violates the Equal Protection

Clause, we must consider the facts and circumstances behind the law, the interests

which the State claims to be protecting, and the interests of those who are

disadvantaged by the classification. By it's nature a equal protection inquiry

examines a broad set of relevant information. Anchorage starts with a facially

neutral knock on a visitor entrance which transforms to intent to conduct

information gathering when that knock is not answered.

Anchorage's custom of policy of entering private residential tax parcels is by

their own acknowledgment tax jurisdiction wide, Docket 1 page 8 #38. I was well

aware of the true meaning of "visit" in Anchorage's internet post.

I have pled a plausible 14th Amendment equal protection claim based on

9th Cir. Case No. _24-4503_____                                    Page 22

extensive personal knowledge and reasonably inferable circumstances. Anchorage has had over 30 years to refine their private property entry scheme but answering a door knock at any given tax parcel will always be a random probably creating a class distinction. My class distinctions are not fictitious, Anchorage should be held to account for why they believe such a distinction is proper.

## (3) Claim IV dismissal under Rule (12)(b)(6)

My complaint identifies personal knowledge of wide spread application of a Anchorage policy or custom, Complaint paragraphs #13, #33, #38, #43, #44, #76, #85, #148. Those allegations taken in the context of a already recognized as plausible Claim I state a Substantive Due Process claim. My 4th Amendment claim has not been found implausible, as it stands the court found a lack of subject matter jurisdiction to decide in a federal form.

In *Berger v. New York*, 388 U.S. 41, 44 (1967) the court held a New York statute unconstitutional under a as applied 4th Amendment challenge and a 14th Amendment due process challenge. My Claim IV is no less cognizable than *Berger's*. The New York statute was found to be unconstitutional trespass, *Berger* at 44, Anchorage's policy or custom is a proper subject for similar review.

As a recap I attended board of equalization hearings where appraisers discussed investigations on private property. The Ombudsman informed me of state statutory authority to enter any tax parcel. Anchorage's internet site

represented every tax parcel must be "visited" at least once every six years, my understanding of visit was enter private property to gather information. I used public information Docket 76 Exhibit 19 pages 162-182 indicating "Ex Ownr/Oc" on some parcels which I read as Anchorage appraisal employee interviews of dwelling occupants with homestead exemptions. I did not accept representations search warrants are available to compel entry. The actions were undertaken by Anchorage under tax jurisdiction wide policy or custom.

Having a pre printed door hanger, Docket 1 exhibit 4, provides no information on what authority Anchorage's uses to enter property but does imply a widespread practice, one does not pre print door hangers to knock on a single door.

The constitutional validity of state laws is capable of beginning judicially heard and determined, *West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 386 (1937). The Anchorage policy or custom of entering private residential property to gather information is state law. Conflict preemption exist under the Supremacy Clause, it is impossible for Anchorage to comply with both the 4th Amendment and it's physical intrusion policy or custom.

There is a longstanding understanding the founders wished to eliminate British writs of assistance, *Boyd v. United States*, 116 U.S. 616, 525 (1866) "which James Otis pronounced "the worst instrument of arbitrary power, the most destructive of English liberty, and the fundamental principles of law, that ever was

9th Cir. Case No. _24-4503_____                                    Page 24

found in an English law book;" since they placed "the liberty of every man in the hands of every petty officer.""". Anchorage's policy or custom is indistinguishable from a British writ of assistance at least as both apply to the protected area around a house.

The district court in the same opinion dismissing my Claim IV found plausible my Claim I, Docket 16 page 1. The foundations of Claim IV are laid down in Claim I, a violation of my constitutional rights occurring on July 11, 2019.

My Substantive Due Process claim is plausible when my pro se complaint is liberality construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), given *US v. Jones*, 565 U.S. 400, 406 (2012) holding *Katz* doesn't apply on private property. Mine and my neighbors' expectations of privacy are not material.

Substantive due process is the claim when allegations point to government abuse of power, *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 196 (1989). My pleading is Anchorage's policy or custom is indistinguishable from the "any uncustomed goods" searches discussed in *Steagald v. United States*, 451 U.S. 204, 220 (1981) with the additional fact there is no enforceable tax law I can violate. My pleadings cannot be read as Anchorage's 4th Amendment policy or custom is solely against me as in the fashion of *Conner v. City of Santa Ana*, 897 F. 2d 1487 (9th Ckt 1997). If a substantive due process opinion of Anchorage's

9th Cir. Case No. _24-4503_____                                    Page 25

policy or custom is unavailable the court is saying, in effect, every tax parcel

owner must seek court injunction to foreclose Anchorage tax parcel entry under 4th

Amendment protections against state trespass law.

In *Turner v. Memphis*, 369 U.S. 350, 351 (1962) the 42 U.S.C. § 1983

complaint did not identify a specific state law but the answer defended under state

law. I was clearly aware of AS § 29.45.130 and that a "assessor policy" existed

Docket 1 exhibit 3 page 1. Turner may or may not pass muster under today's

plausibility standards but my personal knowledge goes far beyond Mr. Turner's

being refused service. At 352 "The City of Memphis alleged further that **unless**

**and until the regulation was declared unconstitutional**, the city would be bound

to object to desegregation of the restaurant by Dobbs Houses as a violation of

Tennessee law and of the lease." is the same position Anchorage's appears to have

taken to date. The *Turner* court did not hesitate to issue directions to the three-

judge court to enter a decree granting appropriate injunctive relief. As it stands

Anchorage of the 2020's is the new *Memphis* of the 1960's.

The court refused to recognize my claim as a Substantive Due Process

claim, under my allegations I have pled a plausible claim.

## (4) Claim V dismissal under Rule (12)(b)(6)

I realized on August 28, 2019 I had underpaid my ad valorem tax bill. On

August 29, 2019 I proceeded to Anchorage city hall to reconcile the deficiency.

9th Cir. Case No. _24-4503_____                                        Page 26

The cashier at the pay window informed me I owed, in addition to the unpaid

principle, a 10% penalty for delinquency. She had brought my account up on a

computer screen and allowed me to view the screen. I spoke to the head cashier

who confirmed the 10% penalty was due on my account. No due process

procedures were identified to me in discussions with the head cashier. I paid the

unpaid principle and the 10% penalty for delinquency demand. The receipt I was

provided, Docket 1 exhibit 5, was inconsistent with discussions involving the 10%

penalty for delinquency demand. I requested from the cashier proper

documentation showing my payment included a 10% penalty for delinquency

payment. The cashier said she did not have the ability to alter or correct the Rule

10(c) exhibit 5 receipt. The cashier provided a printout of the computer screen

since that was the best she could do, Docket 1 exhibit 6. The computer screen

printout was the same as I had previously viewed.

Due process requires that parties receive fair notice before being deprived of

property. See *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314,

(1950). Anchorage's 10% penalty demand is not a random unpredictable act, they

place a debit in every tax parcel account at some time between August 16 and

August 29 based on the facts of my case.

I have a protected interest in not surrendering a portion of my wealth to

Anchorage unless Anchorage acts consistent with constitutional standards.

Anchorage determined I intentionally left my tax parcel account delinquent and punishment beyond any accrued interest from a late payment was proper. I argue due process requires before Anchorage determines I intentionally left my tax parcel account delinquent they must attempt to notify me and allow opportunity to correct my unintentional error.

Penalty on taxes due is a federal question, *League v. Texas*, 184 U.S. 156, 161-162 (1902). Penalties stand on a different bases than taxes, *League* at 161.

The question is quite simple, does the due process clause of the 14th Amendment afford me any process after a real property ad valorem tax due date has passed before Anchorage can demand a extraordinary 10% delinquency discouragement penalty. There are numerous reasons why a taxpayer might be late in payment including untimely vacation or other planned trip, failure to acknowledge real property tax billing notice, forgetfulness, confusion, misplaced mail. Those and other similar reasons may justify interest on unpaid balance, my claim is without more they do not show the intent necessary to justify a extraordinary 10% delinquency demand.

Alaska law distinguishes ad valorem late payment interest from late payment penalty, *North Slope Borough v. Sohio Petroleum Corp.*, 585 P. 2d 534, 546 (1978), "The purposes of penalty provisions for late payment of taxes are to encourage the timely payment of taxes and to punish those who do not pay on

time.". Also *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 185 (2000)  "all civil penalties have some deterrent effect.".

Constraint is proper under the 14th Amendment, Anchorage has demanded a monetary payment, which is a property interest under the constitution, separate from the ad valorem tax I owed, *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Like *Eldridge* at 333 my claim is a timing issue, at what point in the (1) ad valorem tax billing – (2) overdue account – (3) judicial foreclosure proceedings should it be determined I intentionally failed to pay my ad valorem tax bill and Anchorage is no longer constrained by the 14th Amendment in demanding I owe a extraordinary 10% delinquency penalty.

Without clear guidance on when a overdue ad valorem tax payment delinquency occurs the coercive effect of tax jurisdictions demanding delinquency penalties exist. A *Eldridge* determination can only be had by reviewing Anchorage's 10% delinquency penalty policy or custom. Anchorage Rule 12(b)(6) motion argued the factual issue I made a payment without coercive effects, I would not have asked for a proper receipt if I felt uncoerced. I was not required to demand 14th Amendment due process at the cashier station on August 29, 2019 to preserve my Claim V.

Anchorage's coercive 10% penalty demand is highly successful to taxpayers wishing to avoid foreclosure proceedings, as it currently stands one must pay to

9th Cir. Case No. _24-4503_____                                    Page 29

avoid foreclosure. There is a significant public interest component to my claim,
Docket 1 page 24 paragraph 126, Anchorage will collect over $1,000,000 for the
tax year 2019 as a result of their policy or custom. Unless all those properties are
going into judicial foreclosure Anchorage is collecting considerable sums on 10%
penalties where no adverse effect occurs to them.

The court determined as a matter of fact and law I waived my 14th
Amendment rights on August 29, 2019 by paying Anchorage's demand, Docket 16
page 14. The court failed to apply relevant law and assumed facts not in evidence
to reach it's conclusion. Given Anchorage's experience as a litigator arguing facts
in a Rule 12(b)(6) motion ask the court to abuse it's discretion.

## (5) Claim VII Sua Sponte dismissal under Rule (12)(b)(6)

During my August 29, 2019 encounter the cashier mentioned sometimes
penalties are waved, that she did not have the authority to wave a penalty but the
head cashier did have authority. Speaking to the head cashier to obtain a penalty
waver appeared to be a routine procedure. Based on my August 29, 2019
discussions and a previous 2015 bill error issue and concern about who has access
to revise ad valorem tax account receivables and how waver decisions are made I
pled a equal protection violation. Given Anchorage is managing a public treasury
any changes to accounts receivable is a paramount public trust issue.

Anchorage treated me differently under one circumstance waving a penalty

9th Cir. Case No. _24-4503_____                                   Page 30

before I even raised the issue in 2015 while not waving a penalty when it appears to be common practice based on the head cashiers discretionary authority and her apparent ability to modify accounts receivable balances. Contrast with some public treasuries were only bonded and insured persons are authorized to make any changes to accounts.

Anchorage did not seek pre-answer Rule 12(b)(6) dismissal of my claim, Docket 16 page 16, "The Court first notes that the Municipality's Motion has not directly addressed this claim.". The record before the court consisted of my complaint and opposition to Anchorage's motion to dismiss. Anchorage is aware of their own ordinances, municipal ordnance §12.15.065 - Tax penalty waiver provides procedural process described at section A as "Purpose. The purpose of this section is to authorize and establish a process to waive the late penalty if delinquency is due to catastrophic occurrence.". Anchorage under codified law created a class distinction.

The court dismissed my claim sua sponte. I am not a member of a federally recognized disadvantaged class, leave to amend was meaningless.

In *Shapiro v. Thompson*, 394 U.S. 618, 627 (1969) two indistinguishable classes of individuals were treated differently, no protected class was at issue. The court held the state failed to meets it burden of showing a constitutionally permissible state objective.

The 9th Circuits sua sponte district court authority traces back to *Wong v. Bell*, 642 F. 2d 359, 161-162 (9th Ckt. 1981). The court cited a well respected legal treatise, C Wright & A. Miller, Federal Practice and Procedure (1969) as controlling authority. The Supreme Court made clear in *Neitzke v. Williams*, 490 U.S. 319, 329 (1989) at note 8, a pre-answer Fed.R.Civ.P. 12(b)(6) dismissal is a undecided question therefore the legal treatise cited stands on wobbly feet.

While the 9th Circuit recognizes Supreme Court holdings can overrule prior precedent using a legal treatise to decide the law of the circuit is less clear. Fed.R.Civ.P. 12(b)(6) is a Federal Statute and should be construed by the court in accordance with rules of statutory construction and a legislative history formed primary from the Advisory Committee on Rules notes. The 5th Circuit when considering an earlier panels precedent includes confirmation the Supreme Court has not changed the **focus of relevant analysis**, *United States v. Rahimi*, 61 F. 4th 443, 450 (5th Circuit 2023). In *Polk Co. v. Glover*, 305 U. S. 5,10 (1938) the court held "[t]he salutary principle that the essential facts should be determined before passing upon grave constitutional questions ..." recognizes the importance of material facts when state actors attempt to expand state powers.

Procedural Rule 12(b)(6) should be examined anew to determine if pre-answer sua sponte dismissal is contemplated under a "dismiss all claims" pre-answer motion and if necessary what legal standard to apply. But for the sua

9th Cir. Case No. _24-4503_____                    Page 32

sponte dismissal my claim is plausible.

## (6) The Protective Order Granted to Anchorage

One claim survived Rule 12(b)(6) pre-answer dismissal, my 4th Amendment unreasonable search claim. Going forward Anchorage filed a answer pleading, the parties conducted a Rule 26 meet and confer & reported that meeting to the court, I proceeded to Rule 26 discovery serving a request for production, all those are normal procedures in the course of litigation.

*(a) Pleadings or Who's on First?* My 4th Amendment claim turns on a event that occurred July 11, 2019. That date is first identified at Docket 1 page 10 #41. Anchorage denied #41 in whole, Docket 22 page 6 #41. At #45 I alleged no effort was made to contact me after July 11, 2019, Anchorage did not answer #45, their #45 response is to deny #34. A #45 response is yes or no, yes means entry after July 11, 2019, another door knock.

I appealed my 2020 property appraisal valuation, Docket 76 exhibit 19. Included in Anchorage's response to my appeal is a "To Whom It May Concern" document at exhibit 19 page 211. It is the policy or custom of Anchorage to conduct on site information gathering when a appeal is filed, Docket 76 exhibit 6 page 104. A board of equalization appeal information gathering is a "full property reinventory" and requires another door knock.

Anchorage denied being on my tax parcel July 11, 2019 but under

9th Cir. Case No. _24-4503_____                                    Page 33

Anchorage property tax appeal policy or custom contemplated entering my

property sometime between February 5, 2020, my appeal filing date and March 24,

2020, my appeal hearing date, see Docket 76 exhibit 19 pages 1 & 3.

    ***(b) Discovery or What's on Second.*** In Rule 26 meet & confer, Docket 38

page 3 (C) (1) Anchorage contemplates discovery on "[a]ctual and constructive

notice regarding plaintiff's objections to persons entering his land...". At Docket 38

page 5 the parties informed the court no privilege or work product protection

issues were anticipated.

    Anchorage conducted no discovery in the instant case. I was not served any

request for production, I was not served any interrogatories and I was not disposed.

    Anchorage served Rule 26 initial disclosures, see Docket 58 exhibit 2,

identifying employees as clients of the municipal attorney's office.

    At this point two matters of first impression are contemplated for opinion,

my 4th Amendment Monell appraiser claim and Anchorage's special needs

appraiser exception to the 4th Amendment. Anchorage is the master of their

affirmative defense pleading, I am entitled to discovery on Anchorage's defense.

My first request for production seeks documents, electronically stored information,

or other tangible items on Anchorage's Monell policy or custom and Anchorage's

AS § 29.45.130 & special needs appraiser exception defenses.

    ***(c) Motion for Protective Order or I Don't Know's on Third.*** My Rule 34

motion is to Anchorage, a municipal corporation, *Hickman v. Taylor*, 329 U.S. 495, 504 (1947), "Rule 34, like Rule 33, is limited to parties to the proceeding, thereby excluding their counsel or agents. ".

Anchorage knew they have two variations of entry onto single family residential property when they sought the Docket 41 protective order. Anchorage field appraisal employees conduct area sweeps doing cold calls, moving door to door through a area, if significant discrepancies are found they do a full reinventory, Docket 76 exhibit 6 page 105. If a tax appeal is filed Anchorage includes a AS § 29.45.130(b) notice, Docket 76 exhibit 33 was a sample "To Whom It May Concern" notice produced under my first request for production. Docket 76 exhibit exhibit 19 page 211 is the AS § 29.45.130(b) notice included in my 2020 tax appeal. Anchorage preforms a full reinventory on tax appeal parcels, Docket 76 exhibit 6 page 104.

The question of what Anchorage did in 2020 is not material to my claim but for a strong indication Anchorage is attempting to litigate a 2020 entrance and not my July 11, 2019 claim. I filed my complaint June 4, 2021. It is possible two entries occurred within the statute of limitations period, a cold call July 11, 2019 entry and a "To Whom It May Concern" notice entry under my 2020 tax appeal, falling sometime between February 5, 2020, my appeal filing date and March 24, 2020, my appeal hearing date.

9th Cir. Case No. _24-4503_____                                      Page 35

Anchorage sought a protective order on "that entry", the proceedings prior
to the motion for protective order point to "that entry" being a 2020 entry. When I
sought explanation of the "To Whom It May Concern" notice, Docket 76 exhibit 8
page 6 #16 Anchorage responded "No responsive policy can be identified.".

Anchorage's attorney privilege arguments center around a **unrecognized
stipulated case**, Docket 41, pages 3-4:

> "Either a warrant was required for **that entry** or it wasn't. Whatever
> **"policy"** Mr. Anderson may be trying to establish is simply irrelevant
> to the issue remaining before the Court. "

Anchorage's did not seek leave to amend their answer pleading, that would
be the proper course where no agreed stipulations exist and a defendant wishes to
narrow discovery. As a pro se party court procedural rules do not contemplate me
entering into stipulations with a sophisticated party.

At this point conversations that have occurred between myself and
Anchorage's assistant municipal attorney appear to be based on a very limited
inquiry to their client resembling "Did you enter Mr. Anderson's tax parcel?" with
their clients response a "To Whom It May Concern" notice was sent before entry. I
address this gamesmanship more in (8) The motion for Review of Professional
Conduct but for purposes of this protective order Anchorage had not produced a
log of even a single withheld document. Mr. Halloran's declaration, Docket 41-4,

states little more than he is the attorney of record and when we had contacted me

requesting a unnecessary time extension, my request for production had a due date

of January 27, we had a "owe by the way conversation". Had Anchorage made a

waiver or reduction in scope request as to #10 and #37 to me in writing, they had

more than adequate time to do so, I would have responded in writing. A

documented meet and confer beginning with an explanation of why and how my

request is burdensome to the attorney's client is the recognized procedure.

**(d) The Courts Inherent Power to Grant Protective Orders.** The Supreme

Court dismissed *In re Grand Jury*, 23 F. 4th 1088 (9th Cir. 2021) as improvidently

granted, January 23, 2023. Dual-purpose communications, if actually relevant, is

undecided within the 9th Circuit.

There was no Rule 37 motion to compel before the court including Rule

37(a)(5)(b), Anchorage filled it's motion on the due date of my first request for

production. Rule 26(b)(2)(B) applies to the client not the attorney and is limited to

Electronically Stored Information, keyword searches are typically considered

within the minimal efforts expected by a party to identify relevant documents. If

Rule 26 (c) is to be taken seriously, especially where a pro se party is involved,

written "good faith" documentation is a minimum standard for such important

decisions. A attorney sucking up all their clients documents to defeat discovery is

not recognized as attorney-client privilege, *Fisher v. United States*, 425 U.S. 391,

396 (1976). My request by it's terms required at least two Anchorage municipal

corporation individuals receive communications before the communications was

relevant to my request.

Mr. Halloran knew or should have known, Docket 76 Exhibit 6 page 104,

ADDENDUM 3 PROPERTY INSPECTION CRITERIA section of Anchorage's

Residential Appraisal Manual was revised on August 16, 2016, and page 105

ADDENDUM 4 QUICK REINVENTORY PROCEDURE was revised on August

17, 2016. While it is unknown what those revisions to the field appraisal were the

task flow document, Docket 76 exhibit 7 page 8, I was provided in 2000 is written

in the context of an ordnance with little specificity. **Sometime between 2000 and**

**2016 Anchorage employees began being informed their field appraisal duties**

**were explicitly a AR No. 86-295 at law duty, drive by was not sufficient**

**performance of duties and to "leave immediately" if told to do so.** Alaska

Professional Conduct Rule 3.3. Candor Toward the Tribunal does not permit what

appear to be attorney driven solutions to real world problems to hide in the weeds.

Federal Courts have recognized the duty of candor, *Beam v. IPCO Corp.*, 838 F.

2d 242, 249 (7th Ckt 1988).

The Anchorage municipal attorney's office is treating my request for

production as if made to them and not their client. Anchorage has a gaggle of

unelected oath takers sworn to uphold the constitution, municipal code § 1.35.010

(B)(3) attempts to create attorney-client privileges with over 30 management level employees. A republican form of government expects the legislature to give proper direction to the executive branch and the executive branch to follow that direction, all those management level employees are lay witnesses with absolute immunity in 42 U.S.C. § 1983 controversies, *Briscoe v. LaHue*, 460 U.S. 325, 334 (1983).

The courts order is not founded on a motion to compel production by me as no log was ever produced identifying any documents. The result of the court's order was during the entire pendency of discovery Anchorage never notified me of a single document they claimed privilege on.

The Anchorage municipal attorney's office has no policymaking authority and well it is important to give sound legal advice that advice should be to the legislative body or the mayor who can petition the legislature for appropriate guidance. That is a public process allowing public participation and under most circumstances results in codified law. Reading the municipal Charter as requiring the Anchorage municipal attorney's office give advice to whomever is not what Federal Rules of Evidence 501 contemplates protecting.

It is not a close call, not a single legal principal of federal attorney-client privilege was followed in deciding Anchorage's motion starting with a undocumented "meet & confer" and building with highly questionable municipal business practices. I may be pro se but I recognize when two monumental matters

of civil rights first impression, searches within the constitutionally protected area of private property homes and a special needs exception for field ad valorem appraisers, may potentially be decided by a federal court. Anchorage attempts to reduce my case to pay a buck and receive a hand slap, that is not the case before the court. What ever interpretation Anchorage made of the courts order the results are clear, no privilege logs where ever produced.

Client privilege has never been recognized in such broad terms on such important civil rights matters. The court failed to apply Federal Rules of Evidence Rule 501 "reason and experience", compelling and difficult civil rights constitutional questions under Monell liability should never turn on attorney-client privileges. Anchorage is the only defendant in this case , they have no immunity as a 42 U.S.C. § 1983 person, *Owen v. Independence*, 445 U.S. 622, 650 (1980). The court's order gave Anchorage back a portion of what the law has denied them and in unimaginably broad terms. The court created a new Rule 34 attorney privilege independent of any client objections and unsupported by Rule 501.

## (7) The Rule 12(c) motion for Partial Judgment on Pleadings

Two cases frame the AS § 29.45.130(b) controversy. "The interests protected by state laws regulating trespass and the invasion of privacy, and those protected by the Fourth Amendment's guarantee against unreasonable searches and seizures, may be inconsistent or even hostile.", *Bivens v. Six Unknown Fed.*

*Narcotics Agents*, 403 U.S. 388, 394 (1971) and "[s]ince our decision in

*McCulloch v. Maryland*, 4 Wheat. 316, 427 (1819), it has been settled that state

law that conflicts with federal law is "without effect."", *Cipollone v. Liggett*

*Group, Inc.,* 505 U.S. 504, 516 (1992).

Anchorage seeks to defend their actions under AS § 29.45.130 . The 4th

Amendment preempts under the Supremacy Clause any state statutory warrant

laws unless a special needs exception has been recognized, *New York v. Burger*,

482 U.S. 691, 693 &702 (1987).

I moved the court for Rule 12(c) partial judgment on the pleadings at Docket

48 on the validity of AS 29.45.130 as a defense. Anchorage's Docket 22 page 13

Answer affirmative defense "3. The Municipality was privileged to act as it did, in

compliance with AS 29.45.130(b).". The motion was fully briefed, Dockets 53 &

55. The 9th Circuit has recognized Rule 12(c) partial judgments in similar

circumstances, *McGlinchy v. Shell Chemical Co.*, 845 F. 2d 802, 810 (9th Ckt

1988), dismissal of a plaintiff's claim and dismissal of a defendants affirmative

defense are indistinguishable under Rule 12(c). *McGlinchy* at 810, "Rule 12(c)

faces the same test as a motion under Rule 12(b)(6)". The Rule 12(b)(6) test is now

plausibility, *Benavidez v. County of San Diego*, 993 F. 3d 1134, 1144 (9th Ckt

2021).

Taking Anchorage's AS § 29.45.130(b) allegations as true Anchorage's

employee complied entered my tax parcel during reasonable hours on July 11,

2019 and examined the exterior of my dwelling or other structure. No facts are in

dispute, the matter is a pure question of law. Anchorage's allegations do not

include that I consented to any entry or their employee was outside the

constitutionally protected area of my home.

The court denied my motion finding piecemeal adjudication impermissible,

Docket 91 page 4. I sought an opinion on the whole of Anchorage's privileged to

act defense, not something like a determination that the time of day when

Anchorage's employee entered my tax parcel was not reasonable. A time of day

question is piecemeal, a opinion disposing of the whole of the defense is not.

Partial judgment under Rule 12(c) motions is recognized practice in district

courts in the circuit, *Larsen v. Trader Joe's Co.*, 917 F. Supp. 2D 1019, 1022 (D,

ND California 2013). Partial judgment under Rule 12(c) motions can narrow the

issues for discovery, and summary judgment in the same manner as partial

dismissal of claims under Rule 12(b)(6), either Rule 12 motion when granted is

dispositive of a cause or defense. Under the facts of the instant case AS §

29.45.130's became the rule of decision on a federal question amounting to new

federal common law trespass litigated through state ad valorem tax appeal.

Anchorage made AS § 29.45.130(b) a issue to be litigated. AS §

29.45.130(b) is not itself a Monell policy or custom. Under the particulars of the

instant case Anchorage pled a defense of compliance with state statutory law, AS §

29.45.130(b). My Rule 12(c) motion argued that AS § 29.45.130(b) is inconsistent

with the U.S. Constitution and not a plausible defense.

The court by not deciding my Rule 12(c) motion on the merits while

assuming AS § 29.45.130(b) validity in support of it's Docket 96 opinion is

without support. As a discretionary procedure "assuming without deciding" is not

uncommon but when a important issue which can turn the case is squarely before

the court a opinion on the merits can be the only coarse of conduct. State statutory

law inconsistent with the constitution has never been a recognized source of

federal judicial decisions. The matter was squarely before the court under my Rule

12(c) motion. *Harris v. County of Orange,* 682 F. 3d 1126, 1131 (9th Ckt. 2012)

"*Iqbal* applies to Rule 12(c) motions because Rule 12(b)(6) and Rule 12(c)

motions are functionally equivalent", Anchorage must state a plausible defense for

their "privileged to act"defense to survive my Rule 12(c) motion.

A party seeking a Rule 12(c) opinion has the obligation of timely making

the motion, the court has wide discretion on when to decide the motion. The

expected opinion under Rule 12(c) can be no less than a Rule 12(b)(6) opinion, a

timely decision on the merits of the motion. At the time the court ruled on my

motion, Docket 91, the court had full briefing and the judicially noticed, [Docket

54 Granted at Docket 91 page 1], Alaska legislative history of AS § 29.45.130

amended 1999. Anchorage came forward with no clarity in their opposition.

Pleading defenses not plausible can be rightfully challenged under Rule 12(c). My

motion was not to strike the defense but to decide the merits of AS § 29.45.130 as

a plausible defense. In Anchorage's opposition, Docket 53 page 7, Anchorage

points to my 1999 state lawsuit where the Alaska trail court extended *Weltz v.*

*State*, 431 P. 2d 502, 507 (AK 1967) criminal exigent circumstances to an

unanswered knock by a field appraiser. Nowhere does Anchorage argue exigent

circumstances drove the decisions on July 11, 2019.

    Anchorage did no more than express an affirmative defense opinion,

*Dworkin v. Hustler Magazine, Inc.*, 867 F. 2d 1188, 1193 (9th Ckt 1989), fact-

opinion distinction. Allegations consistent with 4th Amendment law are essential to

make the defense plausible. My Rule 12(c) motion goes to the heart of

Anchorage's AS § 29.45.130 defense and should have been decided on the merits

instead of leaving the question open.

## (8) The motion for Review of Professional Conduct

    At Docket 58 I moved the court to investigate Anchorage professional

conduct in the context of attorney-client relationships. My complaint named one

defendant, the Municipality of Anchorage. I seek no remedy against any natural

person.

    Anchorage has a municipal ordinance under which a formal determination

of representation to a employee is decided, Anchorage Municipal Code Title 1

Chapter § 1.50.010 - Municipal defense and indemnification. Anchorage disclosed

to me a attorney-client relationship with particular employees in their Rule 26

initial disclosures, Docket 58 Exhibit 2 pages 2-3. Given no natural persons were

named in my complaint persons with knowledge of either the facts of the incident

on July 11, 2019 or Monell policies or customs are potential lay witnesses not

litigants. Municipal corporations have no privilege against self incrimination,

*United States v. White*, 322 U.S. 694, 698 (1944). That corporations can only act

through their employees, agents, directors, or officers makes proper management

of employee duties of paramount importance to avoid conflict.

Anchorage's entry at Docket 57 is especially profound, Mr. Gunther gave

the clerk notice of withdrawal of Pamela Weiss & Sean Halloran, Assistant

Municipal Attorneys, as attorneys of record for the **"Municipal Defendants"**. Mr.

Halloran in answering my complaint appears to know little if anything about his

clients policies and procedures, paragraph 79 "Upon information and belief

**subject to discovery**, the Municipality admits the allegations in Paragraph 79 of

the Complaint.". Anchorage's Residential Appraisal Manual plainly informs field

appraisal employees they are acting under job duties defined in AR No. 86-295, a

reevaluation legislative enactment, when conducting information gathering on

private residential property, Docket 76 Exhibit 6 page 105. Given the central issue

9th Cir. Case No. _24-4503_____                                                    Page 45

policy or custom plays in Monell liability the only cognizable answer to paragraph 79 is denial.

Anchorage's as-applied interpretation of AR No. 86-295 is a perpetual six year entry cycle with possible random entries at other times. It is not material that a different meaning might have been intended by the Alaska State legislature or the that the Anchorage legislature may have misinterpreted AS § 29.45.150.

*Hickman v. Taylor*, 329 U.S. 495, 510 (1947) states lawyer duties in most simplistic terms "Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients.". My motion goes to the heart of who are the clients, who is Anchorage protecting.

Fundamental public trust in the judicial system as fact finder cannot permit municipal attorney's to write their own attorney-client rules of professional conduct. The courts are left to police the matter, *Erickson v. Newmar Corp.*, 87 F. 3d 298, 300 (9th Ckt 1996), "The district court has the duty and responsibility of supervising the conduct of attorneys who appear before it.". What legal standard to apply to my motion is a question of law, Anchorage in managing it's affairs cannot require through ordinance their attorney employees act inconsistent with their professional rules. My Docket 58 proposed order is in all form a reasonable inquiry under the circumstances into what Anchorage is doing.

Anchorage's opposition, Docket 65, provides no affirmative evidence my motion contains any inaccurate facts or unreasonable inferences. Anchorage's failure to state a claim upon which relief may be granted is not a cognizable opposition response, it amounts to we will do what we want just leave us alone.

A municipal law office representing multiple unnamed defendants, employees involved in implementation of AR No. 86-295, creates questions of equal access to interview witnesses, a recognized valuable right, *Wharton v. Calderon*, 127 F. 3d 1201, 1204 (9th Ckt 1997). A attorney representation would involve spending of public funds to protect employees with no judicially cognizable liability. The appearance is Anchorage employees maintain separate sets of personal business records and have relevant knowledge protected by attorney-client privilege. All Anchorage's business records are in the custody of the municipal clerk regardless of who has physical possession.

**Most Importantly Anchorage Employees Are Given Absolute Immunity When Testifying As Lay Witnesses In 42 U.S.C. § 1983 Cases**, *Briscoe v. LaHue*, 460 U.S. 325, 334 (1983). The *Briscoe* court speaks of the public trust at 345. If civil rights cases don't deserve the truth it must be asked if we really have a republican form of government.

At a minimum it was abuse of discretion not to require Anchorage to respond to my proposed order, the unguided municipal corporation attorney-client

9th Cir. Case No. _24-4503_____                                    Page 47

relationship will never change without court intervention. Anchorage's

representation of their employees, if it exist, is totally self serving. If Anchorage

directs their attorney employees to indemnify finance department employee

behavior one would expect they would do just that. Most of the court filing by the

four lead Anchorage municipal attorney's who have made appearances in the case

show little knowledge of what their client is doing even though entry onto single

family residential tax parcels by Anchorage appraisal employees occurs several

thousand times each year, Docket 76 exhibits 36, 37 & 38. I again repeat this is a

civil rights case of significant importance.

      Anchorage can foreclose any controversy by responding to to my proposed

order. Anchorage's municipal attorney's office opened the door by informing me

they have a attorney-client relationships with their employees.

## (9) The motion to Compel Rule 33 Signature

      I severed interrogatories on Anchorage June 22, 2023, see Docket 61

Exhibit 3. Anchorage severed me a response to my interrogatories on October 24,

2023. On October 26 I informed Anchorage I did not consider their response

consistent with Rule 33's signature requirement, see Docket 74 Exhibit 2, local rule

meet and confer obligation. I received no response from Anchorage on my request

to provide signed interrogatory responses.

      At Docket 74, I moved the court to enforce the Rule 33 signature

requirements. Docket 74 Exhibit 3 is the interrogatories response served on me

October 24, 2023. Anchorage filed no opposition to my motion and no

acknowledgment Mr. Gunther, attorney of record for the Municipality of

Anchorage, intended his signature to encompass officer or agent status for

Anchorage verification. The court denied my signature motion on March 22, 2024.

Interrogatories are the take home exam of the judicial system. The court in

*United States v. Kordel*, 397 U.S. 1,8 (1970) makes clear two corporate

requirements under Rule 33, the corporation must assign a natural person to

respond once interrogatories have been served and that individual must "verify"

the corporation's answers.

The 9th Circuits model jury instructions 2.11 Use of Interrogatories is clear,

answers to interrogatories are written testimony taken under oath admissible as

evidence at trail. This is consistent with Fed. R. Evid. 801(d)(2), interrogatories are

statements made by a party opponent and more particularly verified statements.

The person answering interrogatories can also be summoned at trail as a lay

witness.

Alaska has rules of professional conduct for attorney's licensed to practice in

the state. Alaska Rule 3.7. Lawyer as Witness does not support testimony by Mr.

Gunther. The courts Docket 91 order puts Mr. Gunther squarely in the role of

testifying at trail.

9th Cir. Case No. _24-4503_____                                    Page 49

A Rule 33(b)(1)(B) officer is defined in 1 U.S.C. § 1 as any person authorized by law to perform the duties of the office. A Rule 33(b)(1)(B) corporation "agent" is any person to whom Anchorage controls the manner and means of performance of job duties, *Scott v. Ross*, 140 F. 3d 1275, 1280 n.1 (9th Ckt 1998). The court misread my motion as demanding the mayor verify the interrogatory answers, my proposed order goes no further than Rule 33 compliance.

In *Hickman v. Taylor*, 329 U.S. 495, 508-509 (1947) the court describes responses to interrogatories as sworn answers to the best of the signers information and belief acknowledging a full and honest answer requires all pertinent information be disclosed.

The whole matter is amplified in my case, a civil rights complaint against a municipal corporation is the essence of public interest litigation. I see Rule 33 as the most important discovery rule in the FRCP, a pro se litigant attempting to depose a corporate Rule 30(b)(6) person is challenging and costly.

1 U.S.C. § 1 defines "signature" or "subscription" as including a mark when the person making the same intended it as such. Mr. Gunther's intent to verify answers to my interrogatories most be without question. There is no statement of verification prior to Mr. Gunther's signature, only Mr. Gunther can answer the factual question of what he intended his signature to encompass.

9th Cir. Case No. _24-4503_____                                    Page 50

      The court failed to apply the rule of law under Rule 33 by requiring a

signature from a person making a clear showing their intent was to respond under

oath to my interrogatories.

9.    **Other Pending Cases.** Do you have any other cases pending in the court of
    appeals? If so, give the name and docket number of each case.

10.   **Previous Cases.** Have you filed any previous cases that the court of appeals
    has decided? If so, give the name and docket number of each case.

    Anderson v Municipality of Anchorage, docket number 22-35570

_Robert Anderson_ _____                              _Robert Anderson_ _____
Name                                                    Signature
_4908 Roger Drive_ _____
_Anchorage, Alaska, 99507_ ___

_____                              _August 13, 2024_ _____
Address                                                 Date

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 25. Certificate of Service for Paper Filing

**9th Cir. Case Number(s)**  24-4503

**Case Name**  Anderson vs. Municipality of Anchorage

I certify that I served on the person(s) listed below, either by mail or hand delivery, a copy of the <u>Appellant's Informal Opening Brief</u>_____ and any attachments.  *(title of document you are filing, such as Opening Brief, Motion for __, etc.)*

**Signature** *Robert Anderson*          **Date** *August 13, 2024*

| Name | Address | Date Served |
|---|---|---|
| Municipality of Anchorage | 632 W 6th Ave.<br>Suite 730<br>Anchorage, AK 99501<br><br>Municipality of Anchorage<br>Department of Law<br>PO Box 196650<br>Anchorage, AK 99519 | 8/13/24 |
|  |  |  |
|  |  |  |
|  |  |  |

***Mail this form to the court at:***
Clerk, U.S. Court of Appeals for the Ninth Circuit, P.O. Box 193939, San Francisco, CA 94119-3939

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 25**                                                            *Rev. 12/01/18*